IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ALCOA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-383-SLR |
| | ) | |
| ALCAN INC., a Canadian corporation, ALCAN | ) | |
| CORP., a Texas corporation, ALCAN CORP., a | ) | |
| Delaware corporation, PECHINEY, S.A., a | ) | |
| French corporation, ALCAN RHENALU, a | ) | |
| French corporation, ALCAN PECHINEY | ) | |
| CORP., a Texas corporation, PECHINEY | ) | |
| METALS, LLC, a Delaware limited liability | ) | |
| company, ALCAN ROLLED PRODUCTS – | ) | |
| RAVENSWOOD, LLC, a Delaware limited | ) | |
| liability company, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' OPENING MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS FOR FAILURE TO STATE
A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE 19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Of Counsel:*

Steven R. Trybus
Donald R. Cassling
Shelley Smith
Patrick L. Patras
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611

*Counsel for Defendants*

Dated: August 15, 2006

# TABLE OF CONTENTS

I. NATURE AND STAGE OF PROCEEDING ................................................................1

II. SUMMARY OF ARGUMENT ...............................................................................2

III. CONCISE STATEMENT OF FACTS ....................................................................3

    A. The '639 Patent ..............................................................................................3

    B. Alcan's Product................................................................................................3

    C. Alcoa's Complaint Alleges Only "Meaningful Preparation" And "Concrete
       Steps." ...............................................................................................................4

IV. ARGUMENT ...........................................................................................................5

    A. The Legal Standards Governing This Motion ...................................................5

    B. Count One Must Be Dismissed Because Alcoa Has Not Alleged An Act Of
       Infringement......................................................................................................7

    C. Count Two Must Be Dismissed Because Alcoa Has Not Stated A Claim For
       Active Inducement To Infringe Under 35 U.S.C. § 271(b). .............................9

    D. Alcoa Cannot Claim That The 2056 Alloy Meets All Of The Limitations Of Any
       Claim Of The '639 Patent. ...............................................................................11

        1. Alcoa Limited The Scope Of The Claims During Prosecution. ..................12

        2. The '639 Patent Specification Limits The Amount Of Zinc That Can Be
          Present In The Claimed Invention. .............................................................14

        3. Alcoa Should Be Judicially Estopped From Claiming That The '639 Patent
          Covers Alloys Outside The 2x24 Family......................................................17

        4. The 2056 Alloy Cannot Be Found To Infringe Under The Doctrine Of
          Equivalents..................................................................................................19

V. CONCLUSION..........................................................................................................22

i

## TABLE OF AUTHORITIES

**Cases**

*AK Steel Corp. v. Sollac & Ugine,*
  344 F.3d 1234 (Fed. Cir. 2003) ................................................................. 13, 14

*Alpex Computer Corp. v. Nintendo Co.,*
  102 F.3d 1214 (Fed. Cir. 1996) ................................................................. 17

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.,*
  73 F.3d 1573 (Fed. Cir. 1996) ................................................................. 17

*Bradley v. Chiron Corp.,*
  136 F.3d 1317 (Fed. Cir. 1998) ................................................................. 5

*Buck v. Hampton Twp. Sch. Dist.,*
  452 F.3d 256 (3d Cir. 2006) ................................................................. 3, 6

*Coinstar, Inc. v. Coinbank Automated Sys., Inc.,*
  998 F. Supp. 1109 (N.D. Cal. 1998) ................................................................. 11

*Cummins-Allison Corp. v. Glory, Ltd.,*
  2005 U.S. Dist. LEXIS 6150 (N.D. Ill. Mar. 28, 2005) ................................................ 8

*D.G. Rung Indus., Inc. v. Tinnerman,*
  626 F. Supp. 1062 (W.D. Wash. 1986) ................................................................. 8

*Data General Corp. v. Johnson,*
  78 F.3d 1556 (Fed. Cir. 1996) ................................................................. 16

*Diceon Elecs., Inc. v. Calvary Partners, L.P.,*
  772 F. Supp. 859 (D. Del. 1991) ................................................................. 6

*Doug Grant, Inc. v. Greate Bay Casino Corp.,*
  232 F.3d 173 (3d Cir. 2000) ................................................................. 5

*Dynacore Holdings Corp. v. U.S. Philips Corp.,*
  363 F.3d 1263 (Fed. Cir. 2004) ................................................................. 9

*Ekchian v. Home Depot, Inc.,*
  104 F.3d 1299 (Fed. Cir. 1997) ................................................................. 17

*EMI Group N. Am. v. Intel Corp.,*
  157 F.3d 887 (Fed. Cir. 1998) ................................................................. 16

*Falkenberg Capital Corp. v. Dakota Cellular, Inc.,*
  925 F. Supp. 231 (D. Del. 1996) ................................................................. 5-6

*Glenayre Elecs., Inc. v. Jackson*,
    443 F.3d 851 (Fed. Cir. 2006) ............................................................ 9

*Hoganas AB v. Dresser Indus., Inc.*,
    9 F.3d 948 (Fed. Cir. 1993) .............................................................. 17

*Ieradi v. Mylan Labs., Inc.*,
    230 F.3d 594 (3d Cir. 2000) ............................................................. 4

*Interactive Gift Exp., Inc. v. Compuserve Inc.*,
    256 F.3d 1323 (Fed. Cir. 2001) .......................................................... 16

*Key Pharms. v. Hercon Labs. Corp.*,
    161 F.3d 709 (Fed. Cir. 1998) ........................................................... 16

*Korst v. Kozakiewicz*,
    1 F.3d 176 (3d Cir. 1993). .............................................................. 5

*Lang v. Pacific Marine & Supply Co.*,
    895 F.2d 761 (Fed. Cir. 1990) ........................................................... 8

*Mylan Pharms., Inc. v. Thompson*,
    268 F.3d 1323 (Fed. Cir. 2001) .......................................................... 16

*Novartis Pharms. Corp. v. Eon Labs Mfg., Inc.*,
    363 F.3d 1306 (Fed. Cir. 2004) .......................................................... 9

*Odetics, Inc. v. Storage Tech. Corp.*,
    185 F.3d 1259 (Fed. Cir. 1999) .......................................................... 8

*Oroamerica Inc. v. D & W Jewelry Co.*,
    10 Fed. Appx. 516, 2001 WL 537780 (9th Cir. 2001) ....................................... 10-11

*Pechiney Rhenalu v. Alcoa, Inc.*,
    No. CIV.A.99-301-SLR, 224 F. Supp. 2d 773 (D. Del. 2002) ................................ 1, 16

*Polymer Indus. Prods. v. Bridgestone/Firestone, Inc.*,
    347 F.3d 935 (Fed. Cir. 2003) ........................................................... 5

*PPG Indus. v. Guardian Indus. Corp.*,
    156 F.3d 1351 (Fed. Cir. 1998) ....................................................... 13, 14

*Pryor v. Nat'l Collegiate Athletic Ass'n*,
    288 F.3d 548 (3d Cir. 2002) .......................................................... 4, 6

*Regents of the Univ. of California v. Eli Lilly & Co.*,
    119 F.3d 1559 (Fed. Cir. 1997) .......................................................... 18

*Rheox, Inc. v. Entact, Inc.,*
  276 F.3d 1319 (Fed. Cir. 2002) .................................................................... 12

*Southwall Techs., Inc. v. Cardinal IG Co.,*
  54 F.3d 1570 (Fed. Cir. 1995) ...................................................................... 12

*Springs Window Fashions L.P. v. Novo Indus., L.P.,*
  323 F.3d 989 (Fed. Cir. 2003) ...................................................................... 12

*Standard Oil Co. v. Am. Cyanamid Co.,*
  774 F.2d 448 (Fed. Cir. 1985) ...................................................................... 14

*United States v. AVX Corp.,*
  962 F.2d 108 (1st Cir. 1992).......................................................................... 5

*Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.,*
  103 F.3d 1571 (Fed. Cir. 1997) .................................................................... 17

## Statutes

35 U.S.C. § 271 ............................................................................................... 8

35 U.S.C. § 271(a) .................................................................................... passim

35 U.S.C. § 271(b) .................................................................................... passim

Fed. R. Evid. 201(d) ...................................................................................... 10

Fed. R.Civ. P. 12(b)(6)................................................................................ 1, 5

## Other Authorities

5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure
  § 1357 (2d ed. 1990).................................................................................... 5

## I.  NATURE AND STAGE OF PROCEEDING

On June 13, 2006, Alcoa, Inc. ("Alcoa") filed a two-count Complaint against Alcan Inc.,

Alcan Corp. (Texas), Alcan Corp. (Delaware), Pechiney, S.A., Alcan Rhenalu, Alcan Pechiney

Corp., Pechiney Metals, LLC, and Alcan Rolled Products – Ravenswood, LLC, (collectively,

"Alcan").  In Count One, Alcoa alleged that Alcan infringed United States Patent No. 5,213,639

(the "'639 patent") in violation of 35 U.S.C. § 271(a) by preparing to sell an alloy registered as

the "2056" alloy.  In Count Two, Alcoa alleged that Alcan actively induced infringement in

violation of 35 U.S.C. § 271(b) by preparing to offer the 2056 alloy to foreign aircraft

manufacturers with knowledge that the alloy likely will be used to make aircraft sold in the

United States.  The '639 patent was the subject of *Pechiney Rhenalu v. Alcoa, Inc.*, No.

CIV.A.99-301-SLR (D. Del.) (the "1999 litigation").

All defendants hereby move to dismiss Alcoa's Complaint under Federal Rule of Civil

Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[1]

## II.  SUMMARY OF ARGUMENT

1.    Alcoa has not stated a claim for relief under 35 U.S.C. § 271(a) because it has not

alleged any act of infringement.  Alcoa has not alleged that Alcan made, used, offered to sell,

imported, or sold any product within the United States covered by any claims of the '639 patent.

Rather, according to Alcoa's Complaint, Alcan has only "made meaningful preparations" and

---

[1]    Alcan was granted an extension of time until August 15, 2006 to respond to Alcoa's
Complaint.  In addition to this motion, defendants Alcan Inc., Alcan Corp. (Texas), Pechiney,
S.A., and Alcan Pechiney Corp. are submitting a motion to dismiss for lack of personal
jurisdiction.  Defendants Alcan Corp. (Texas), Alcan Corp. (Delaware), Alcan Pechiney
Corp., Pechiney Metals, LLC, and Alcan Rolled Products-Ravenswood, LLC are submitting
a motion to dismiss for improper joinder.  Because the three motions involve different groups
of defendants and distinct legal issues, in order to minimize confusion, the defendants are
submitting three individual briefs instead of one combined brief.

"taken concrete steps" to offer the 2056 alloy for sale. These allegations are insufficient as a matter of law to state a claim for infringement under Section 271(a).

2.    Alcoa has not stated a claim for relief under 35 U.S.C. § 271(b) because it has not alleged that any of Alcan's customers engaged in acts of infringement. Alcan, therefore, could not have "actively induced" them to do so. According to Alcoa's Complaint, Alcan has made "preparations" to offer the 2056 alloy for sale with knowledge that its customers "likely" would use the alloy in aircraft sold in the United States. These allegations are insufficient as a matter of law to state a claim for active inducement under Section 271(b).

3.    Moreover, Alcoa's claims for infringement and active inducement of infringement fail for an additional reason: Alcan's 2056 alloy cannot meet each limitation of any claim of the '639 patent. Based on Alcoa's prior actions and the positions it took both in the United States Patent and Trademark Office and in this Court, the claims of the '639 patent are limited to alloys (and methods of making alloys) in which the amount of zinc is far less than the amount indisputably present in 2056. On the face of the public record, the 2056 alloy does not come close to meeting the claims as Alcoa has limited them. Alcoa is estopped from now changing its positions in order to maintain this suit against Alcan.

## III.    CONCISE STATEMENT OF FACTS[2]

On June 13, 2006, Alcoa filed its two-count Complaint against Alcan alleging

infringement (Count I) and active inducement to infringe the '639 patent (Count II).

### A.    The '639 Patent

The '639 patent was issued to Alcoa on May 25, 1993.  The '639 patent is entitled

"Damage Tolerant Aluminum Alloy Products Useful for Aircraft Applications Such as Skin."

(Compl. ¶ 21.)  The '639 patent contains 232 claims.  Of these, 89 recite methods of producing

aluminum products (claims 1-69 and 104-123), one recites aluminum product produced by

certain of the claimed methods (claim 124), and the remaining 142 claims recite aluminum alloys

as products made from such alloys (claims 70-103 and 125-232).  (Compl. Ex. A.)

### B.    Alcan's Product

On or about February 18, 2003, Alcan introduced a new alloy to the Aluminum

Association for international registration.  (Compl. ¶ 31.)  Because the new alloy was an original

alloy, rather than a derivative of a pre-existing alloy, Alcan requested an original designation.

The Aluminum Association agreed:  As reflected by the Aluminum Association's International

Designations, rather than assigning the next number in the 50-year old 2x24 family (for example,

2624), the Aluminum Association gave Alcan's new alloy the first designation – 2056 – in a

brand new alloy family – 2x56.  (App. Ex. 10, A318.)[3]  According to the Aluminum Association

---

[2]    For purposes of this motion, Alcan accepts as true the well-pleaded facts in the complaint and
contained in exhibits and documents referenced in the complaint.  Alcan also incorporates
materials properly subject to judicial notice.  *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d
256, 260 (3d Cir. 2006).

[3]    The Aluminum Association's International Alloy Designations and Chemical Composition
Limits for Wrought Aluminum and Wrought Aluminum Alloys is submitted in the Appendix
hereto as Exhibit 10, pages A310-A343.  Alcoa relies on these registrations in its Complaint
(*see* Compl. ¶¶ 23, 31) and, thus, they are properly before the Court on this Motion to

registration, the 2056 alloy contains a minimum of 0.4% wt. zinc to a maximum of 0.8% wt. zinc. (*Id.*)

### C.   Alcoa's Complaint Alleges Only "Meaningful Preparation" And "Concrete Steps."

Alcoa alleges that there is a controversy over whether "Alcan's imminent plans to offer 2056 for sale in the United States, or to foreign manufacturers who are likely to import products containing the alloy into the United States, will infringe the '639 patent." (Compl. ¶ 49.) In Count One, Alcoa alleges that Alcan has infringed the '639 patent in violation of 35 U.S.C. § 271(a) by making "meaningful preparations" and taking "concrete steps" to offer 2056 products for sale within the United States. (Compl. ¶ 51.) In Count Two, Alcoa alleges that Alcan has committed active inducement in violation of 35 U.S.C. § 271(b) by making "meaningful preparations" and taking "concrete steps" to offer aluminum 2056 products for sale to foreign aircraft manufacturers "with knowledge that those products are likely to be used in aircraft sold in the United States." (Compl. ¶ 53.) Although the '639 patent includes 232 claims, Alcoa does not identify even a single claim that it believes Alcan has infringed.

---

Dismiss. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 559-60 (3d Cir. 2002). Indeed, Alcoa has never asserted that it has obtained or tested any 2056 alloy and thus its allegations are totally premised on the Aluminum Association registration. In any event, the Aluminum Association's International Alloy Designations are facts of public record subject to judicial notice under Federal Rule of Evidence 201. *See Ieradi v. Mylan Labs., Inc.*, 230 F.3d 594, 600 n.3 (3d Cir. 2000) ("Under Federal Rule of Evidence 201, [a court] may take judicial notice at any stage of the proceeding of a fact not subject to reasonable dispute that is capable of accurate and ready determination by resort to a source whose accuracy cannot be reasonably questioned.").

## IV.    ARGUMENT

### A.    The Legal Standards Governing This Motion

A motion for dismissal under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the allegations in the complaint. *Korst v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).[4] A pleader is required to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." *Id.* (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (2d ed. 1990)). If the facts alleged in the complaint, even if true, fail to support relief on the asserted claims, the suit should be dismissed. *Korst*, 1 F.3d at 183.

The sufficiency of the complaint is tested as a matter of law, accepting as true all well-pleaded allegations of fact, construed in the light most favorable to the plaintiff. *Id.*; *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1321-22 (Fed. Cir. 1998). But, only ***well-pleaded facts*** are taken as true. Conclusions, unwarranted inferences, or "legal conclusions either alleged or inferred from the pleaded facts" should not be accepted. *Korst*, 1 F.3d at 183; *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000). "[C]ourts have an obligation in matters before them to view the complaint as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable. We do draw on the allegations of the complaint, but in a realistic, rather than a slavish, manner." *Id.* at 184; *see United States v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992) (a court is obliged neither to credit bald assertions, unsubstantiated conclusions "nor to honor subjective characterizations, optimistic predictions, or problematic suppositions"); *Falkenberg Capital Corp. v. Dakota*

---

[4]    Although Federal Circuit case law is controlling on matters pertaining to patent law, application of Rule 12(b)(6) is resolved under the law of the regional circuit. *See Polymer Indus. Prods. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 937 (Fed. Cir. 2003).

*Cellular, Inc.*, 925 F. Supp. 231, 236-37 (D. Del. 1996) (refusing to treat plaintiff's proffered construction of contract language as a fact that must be accepted as true on a Rule 12(b)(6) motion to dismiss).

On this motion, in addition to the well-pleaded facts in the Complaint, the Court may also consider the '639 patent, which was attached to the Complaint, as well as "any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 559 (3d Cir. 2002) ("Documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim."). On a motion to dismiss, a court is "free to take judicial notice of certain facts that are of public record if they are provided to the Court by the party seeking to have them considered." *Diceon Elecs., Inc. v. Calvary Partners, L.P.*, 772 F. Supp. 859, 861 (D. Del. 1991).

Here, accepting as true the facts alleged by Alcoa, the documents attached to and/or referred to in the Complaint, and facts of which this Court may take judicial notice, including the file history of the '639 patent, the positions taken by Alcoa in the 1999 litigation, and the 2056 registration referred to by Alcoa, it is clear that Alcoa has not – and cannot – set forth information sufficient to support the elements of its asserted claims. Accordingly, the Complaint should be dismissed.

**B.    Count One Must Be Dismissed Because Alcoa Has Not Alleged An Act Of Infringement.**

In Count One, Alcoa purports to state a claim for "infringement" under 35 U.S.C.

§ 271(a).  Section 271(a) prohibits a defendant from importing, making, using, selling, or

offering to sell a patented invention in the United States.  It provides:

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

35 U.S.C. § 271(a).

However, Alcoa does not allege that Alcan "imported, made, used, sold, or offered to

sell" any product.  Rather, Alcoa alleges that Alcan has infringed the '639 patent by making

"meaningful preparations" and taking "concrete steps" to offer aluminum alloy products for sale

within the United States.  (Compl. ¶ 51.)  According to Alcoa's Complaint, Alcan agents have

merely "marketed" 2056.  (Compl. ¶ 36.)  They allegedly:  (1) met in Paris with China's First

Aircraft Institute ("FAI") and proposed that FAI replace 2524 with 2056 in China's Advanced

Regional Jet program (Compl. ¶ 37); (2) met with DaimlerChrysler Aerospace Airbus GmbH,

the German member of the Airbus consortium, and with representatives of Brazil's Embraer, to

offer 2056 for use in aircraft under development at those companies (Compl. ¶ 38); (3) delivered

two presentations at the AeroMat 2004 conference in Seattle comparing 2056 with 2524, and

describing 2056 as an "Alcan offer" and as "[i]ndustrially ready," with a "[f]ull data package

available" (Compl. ¶ 39); (4) wrote that "'Alcan intends to offer' 2056 products for sale"

(Compl. ¶ 45); and (5) "feature[d] 2056 prominently on its corporate webpage" as one of its

"new alloys/solutions" (Compl. ¶ 46).  These alleged activities, even if all taken as true, do not

constitute infringement of the '639 patent in the United States under Section 271(a).

7

Federal Circuit authority is clear on this point. Where a defendant has not actually "imported, made, used, sold, or offered to sell" a product in the United States, it has not violated the statute. 35 U.S.C. § 271(a); *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1273 (Fed. Cir. 1999) (noting that a patentee has the right to exclude others from "making, using, offering to sell or selling a patented invention"); *Cummins-Allison Corp. v. Glory, Ltd.*, 2005 U.S. Dist. LEXIS 6150, at *6 (N.D. Ill. Mar. 28, 2005) ("According to the patent statute [the defendant] is guilty of infringement only if it 'makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent.'").

Thus, Alcoa's allegations of "preparation," "ability," or "intent" to infringe a patent are insufficient as a matter of law to state a claim under Section 271(a). *See, e.g., Lang v. Pacific Marine & Supply Co.*, 895 F.2d 761, 765 (Fed. Cir. 1990) (refusing to recognize allegations of "threatened" patent infringement as stating a claim under prior version of Section 271); *D.G. Rung Indus., Inc. v. Tinnerman*, 626 F. Supp. 1062, 1063 (W.D. Wash. 1986) ("[E]ven if plaintiff could prove intent and immediate capability to infringe, plaintiff does not state a case for patent infringement under 35 U.S.C. § 271."). Count One, accordingly, should be dismissed.

### C.    Count Two Must Be Dismissed Because Alcoa Has Not Stated A Claim For Active Inducement To Infringe Under 35 U.S.C. § 271(b).

In Count Two, Alcoa purports to state a claim for "active inducement" in violation of 35 U.S.C. § 271(b). Alcoa alleges that Alcan has made "meaningful preparations" and taken "concrete steps" to offer aluminum alloy products for sale to foreign aircraft manufacturers with knowledge that those products "are likely to be used in aircraft sold in the United States," in violation of the statute. (Compl. ¶ 53.) The allegations do not make out a claim for active inducement under Section 271(b).

8

Section 271(b) prohibits "actively inducing" another to infringe a patent, *i.e.*, "actively inducing" another to import, make, use, sell, or offer to sell a patented invention in the United States. 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer."). It is well-settled that, to prove inducement, Alcoa first must establish an underlying act of direct infringement. *See Novartis Pharms. Corp. v. Eon Labs Mfg., Inc.*, 363 F.3d 1306, 1308 (Fed. Cir. 2004) ("When indirect infringement is at issue, it is well settled that there can be no inducement or contributory infringement absent an underlying direct infringement."); *Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1272 (Fed. Cir. 2004) ("Indirect infringement, whether inducement to infringe or contributory infringement, can only arise in the presence of direct infringement, though the direct infringer is typically someone other than the defendant accused of indirect infringement.").

Thus, to state a claim for inducing infringement here, Alcoa must plead at least one predicate act by Alcan's customers in the United States that directly infringes the '639 patent. *See Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 858 (Fed. Cir. 2006) (where allegations of indirect infringement were based solely on defendant's sales of infringing products to its customers, plaintiff had to show that defendant's customers directly infringed the patent). Alcoa has not alleged any such acts of direct infringement by Alcan's customers. That is, Alcoa has not alleged that any of Alcan's customers have "imported, made, used, sold, or offered to sell" any infringing product in the United States. Alcoa's allegations that Alcan has made "preparations" to offer 2056 for sale to customers who are "likely to use" the products in aircraft sold in the United States, even if true, are insufficient to state a claim of active inducement. Count Two, accordingly, should be dismissed.

**D.    Alcoa Cannot Claim That The 2056 Alloy Meets All Of The Limitations Of Any Claim Of The '639 Patent.**

Even if Alcoa had alleged sufficient activity under Section 271(a) or (b), its Complaint would remain insufficient on an independent ground:  The accused product, the 2056 alloy, does not meet all of the compositional limitations of any claim of the '639 patent.  Not surprisingly, Alcoa was unable to identify in its Complaint any particular claim that Alcan's 2056 alloy supposedly infringes.  All of the claims are limited to alloys having no more than 0.25% zinc.  The undisputed public record, however, demonstrates that the 2056 alloy includes a minimum of 0.4% zinc.  Alcan's 2056 alloy, therefore, cannot infringe.

Alcoa consistently confirmed over time that the claims of the '639 patent are limited to alloys having no more than 0.25% zinc.  Alcan confirmed this when it prosecuted the parent applications to the '639 patent (App. Ex. 3, A92-94; App. Ex. 7, A187-89; App. Ex. 10, A318 (showing 2024 having a maximum zinc content of 0.25%)), when it revised its specification in the continuation-in-part ("CIP") application that became the '639 patent (App. Ex. 9, A208), and again when it litigated the '639 patent in the 1999 litigation (App. Ex. 11, A365, A377, A385; App. Ex. 12, A408, A410; App. Ex. 13, A416).  Alcoa cannot now reverse positions to try to maintain a claim for infringement against Alcan.

**1.    Alcoa Limited The Scope Of The Claims During Prosecution.**

Prosecution of the '639 patent began with two applications (serial numbers 572,625 and 572,626) filed on August 27, 1990.  (App. Ex. 1; App. Ex. 5.)[5]  As to composition, the

---

[5]    Alcan respectfully requests that this Court take judicial notice of the file history of the '639 patent, referenced portions of which are attached to the Appendix as Exhibits 1-9, as well as certain documents from the 1999 litigation, attached to the Appendix as Exhibits 11-14. Public documents, including patent file histories and litigation records, are properly the subject of judicial notice.  Fed. R. Evid. 201(d); *see, e.g., Oroamerica Inc. v. D & W Jewelry Co.*, 10 Fed. Appx. 516, 2001 WL 537780, at *1 (9th Cir. 2001) (granting request to take

applications identified preferred ranges of alloying elements and impurities, with zinc

"preferably hav[ing] a maximum of 0.2 wt.%." (App. Ex. 1, A7; App. Ex. 5, A114.) The claims

recited alloys "containing" components in certain ranges of amounts. (App. Ex. 1, A18-43; Ex.

5, A124-49.) In August 1991, the PTO issued Office Actions in both proceedings rejecting all of

the pending claims over a prior art patent issued to Cho alone or in combination with another

patent (issued to Hyatt). (App. Ex. 2, A50-51; App. Ex. 6, A156-57.) Alcoa responded in

February 1992 with arguments and amendments to its claims. (App. Ex. 3; App. Ex. 7.)

Alcoa amended its applications to restrict the claims to alloys "consisting essentially of,"

rather than merely "containing," the specified components. (App. Ex. 3, A60-92; App. Ex. 7,

A164-87.) In connection with these amendments, Alcoa also argued that "[t]he invention

includes combinations of composition and process not heretofore realized in the art." (App. Ex.

3, A92-94; App. Ex. 7, A187-89.) In particular, Alcoa argued that it was "incorrect" to read the

prior art Cho patent as describing processing steps for Alcoa's "AA2024 or Al-Cu-Mg alloys"

because the Cho alloys contained an element (lithium) in excess of the amount permitted by the

2024 registration. (*Id.*) Alcoa argued:

> Cho's alloys by definition contain more lithium than is allowable in alloy 2024.
> AA registration limits for alloy 2024 limit elements not listed to a maximum of
> .05% each. Cho's minimum lithium is ten times that amount, and Cho's examples
> which revolve around alloy 2091 contain 2.11% lithium (more than 40 times the
> maximum permitted for alloy 2024). In fact, alloy 2091 has a registered
> minimum of 1.7% lithium which is around 34 times the maximum of 0.05%
> lithium permissible as an impurity according to the AA2024 registration

---

judicial notice of file history of design patent); *Coinstar, Inc. v. Coinbank Automated Sys.,
Inc.*, 998 F. Supp. 1109, 1114 (N.D. Cal. 1998) (taking judicial notice of documents from
patent file history, including amendment and supporting declaration; "Judicial notice of
matters of public record, including administrative records and procedures, are appropriate
pursuant to Rule 201.").

> composition limits. It is respectfully submitted that it is not correct to refer to
> Cho as disclosing processing for Al-Cu-Mg alloys or alloy 2024.

(App. Ex. 3, A93; App. Ex. 7, A188.) In response to these arguments, in March 1992, the PTO

concluded that the earlier rejections largely had been overcome. (App. Ex. 4, A105; App. Ex. 8,

A198.)

Alcoa ultimately abandoned the two August 1990 parent applications in favor of a single

CIP application (serial number 847,352) filed March 6, 1992. (App. Ex. 9.) The claims in the

CIP application retained the limitation to aluminum alloys "consisting essentially of" the

specified elements. (App. Ex. 9, A252-97.) In addition, Alcoa changed its specification

specifically to incorporate the 0.25% upper limit for zinc from the 2024 registration. Alcoa

changed the specification to state that "[i]mpurity element Zn [zinc] preferably has a maximum

of 0.2 or 0.25%." (App. Ex. 9, A208.)

Alcoa's arguments and amendments limit the scope of its claims. *See Springs Window

Fashions L.P. v. Novo Indus., L.P.*, 323 F.3d 989, 994 (Fed. Cir. 2003); *Southwall Techs., Inc. v.

Cardinal IG Co.*, 54 F.3d 1570, 1576 (Fed. Cir. 1995); *see also Rheox, Inc. v. Entact, Inc.*, 276

F.3d 1319, 1326-27 (Fed. Cir. 2002). Alcoa disclaimed coverage for alloys that contain elements

outside the ranges of the 2024 registration. It stated: "[The disclaimed alloys] by definition

contain more [of one element] than is allowable in alloy 2024. [Aluminum Association]

registration limits for alloy 2024 limit [that element] to a maximum of .05% each." (App. Ex. 3,

A92-94; App. Ex. 7, A187-89.) Here, the accused 2056 alloys by definition contain more zinc

than is allowable in alloy 2024. Aluminum Association registration limits for alloy 2024 limit

zinc to a maximum of 0.25%. (App. Ex. 10, A318.)

A reasonable competitor would understand the amendments and arguments in the

prosecution history as clearly disavowing alloys with elements in amounts outside those listed in

the 2024 registration. Accordingly, Alcoa is now precluded from attempting to change the scope of its claims to try to claim infringement by alloys with far more than the permissible amount of zinc. Both 2024 and the 2x24 family have an upper limit for zinc of 0.25%. (*Id.*) Alcan's 2056 alloy includes zinc at levels (0.4-0.8%) that are 60%-220% ***higher*** than that limit. (*Id.*) Thus, there can be no literal infringement.

2.    **The '639 Patent Specification Limits The Amount Of Zinc That Can Be Present In The Claimed Invention.**

The '639 patent specification's limit on zinc content confirms that Alcan's 2056 alloy does not come within the scope of the patent claims. All of the claims are limited by, among other things, the chemical composition of the aluminum alloy. Each claim recites a permissible range for copper, magnesium, and manganese and requires that the "balance" of the alloy be "essentially aluminum and incidental elements and impurities." (Compl. Ex. A.) For instance, claim 70 (the first product claim) recites the following:

> 70.    A product comprising an aluminum base alloy consisting essentially of, by weight, about 3.8 to 4.5% copper, about 1.2 to 1.8% magnesium, about 0.3 to 0.9% manganese, the balance essentially aluminum and incidental elements and impurities, said product having [certain properties].

(Compl. Ex. A, col. 29, lns. 60-68.) The phrase "consisting essentially of" in a patent claim represents a middle ground between the open-ended term "comprising" and the closed-ended phrase "consisting of." *AK Steel Corp. v. Sollac & Ugine*, 344 F.3d 1234, 1239 (Fed. Cir. 2003). The phrase "has long been understood to permit inclusion of components not listed in the claim, provided that they do not 'materially affect the basic and novel properties of the invention.'" *Id.*; *PPG Indus. v. Guardian Indus. Corp.*, 156 F.3d 1351, 1354 (Fed. Cir. 1998). Thus, an accused product will not infringe so long as it contains an additional component in such an amount so as to materially affect the basic and novel properties of the invention.

The specification can further define the scope of "consisting essentially of" claims. That is, the specification can demarcate a preferred limit, the point at which an additional component will have a material effect on the basic and novel properties of an invention taking the product outside the patent claims. *See, e.g., AK Steel*, 344 F.3d at 1239 (holding that, where the specification spoke to the preferred amount of an unlisted component, the specification was dispositive, and a product with an additional amount did not infringe); *see also Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452-53 (Fed. Cir. 1985) (finding that, where specification stated that "metallic copper when used alone is ineffective," and prosecution history included statement that metallic copper was "outside the claims," patentee surrendered any interpretation that would include metallic copper catalyst); *cf. PPG Indus.*, 156 F.3d at 1355 (finding that, although the patent was silent regarding the amount of iron sulfide, "PPG could have defined the scope of the phrase 'consisting essentially of' for purposes of its patent by making clear in its specification what it regarded as constituting a material change in the basic and novel characteristics of the invention.").

Here, as in *AK Steel*, the specification provides a dispositive guide as to the amount of zinc that will materially affect the basic and novel properties of the invention. The patent specification states: "[Z]inc preferably has a maximum of 0.2 or 0.25%." (Compl. Ex. A, col. 3, lns. 22-23.) This patent specification is dispositive. As in *AK Steel*, where the inventors stated that silicon "should not exceed about 0.5%," the specification here draws a line defining the percentage of zinc that the inventors consider "to be too much." Thus, zinc in excess of 0.25% will materially alter the basic and novel properties of the invention, and, therefore, the claims of the '639 patent are limited to alloys having no more than 0.25% zinc by weight. Alcan's 2056 alloy cannot literally infringe.

14

**3.    Alcoa Should Be Judicially Estopped From Claiming That The '639 Patent Covers Alloys Outside The 2x24 Family.**

During the 1999 litigation, Alcoa repeatedly asserted that its invention – and the claims of the '639 patent – were limited to the 2x24 family of alloys. Alcoa, for example, opposed the production of documents related to other alloys. In response to Pechiney Rhenalu's request for documents, Alcoa objected to document requests calling for documents relating to 2xxx alloys outside the 2x24 family, asserting: "There are more than fifty different 2xxx aluminum alloys registered with the Aluminum Association alone. Of the 2xxx series, the '639 patent refers only to 2024." (App. Ex. 11, A365.) Alcoa repeatedly asserted that documents about alloys outside the 2x24 family were "not relevant" and, further, "not reasonably calculated to lead to the discovery of admissible evidence." (*E.g.*, App. Ex. 11, A365, A367-69, A375-77, A380-83, A385-87.)

Subsequently, in opposing Pechiney's motion to compel documents concerning other alloys, Alcoa submitted to the Court a sworn declaration from Robert Westerlund, one of the named inventors, confirming that the alloy composition in the '639 patent claims was limited to the 2x24 family. In his August 30, 1999 declaration, Westerlund objected to the document requests because they "[go] beyond the 2x24 family of alloys and [ask] for proprietary information regarding alloys that are neither referred to in the '639 patent nor in the Complaint, including all other copper based (2xxx) aluminum alloys and every zinc-based (7xxx) alloy." (App. Ex. 12, A408.) He stated: "[T]he 2xxx alloys on Pechiney's revised list [including, for example, 2014, 2018, 2218, 2618, and 2219] do not appear to be even remotely relevant to the inventions of the '639 patent. Not one . . . is within the 2x24 family." (App. Ex. 12, A410.)

In the 1999 litigation, Alcoa repeatedly took the position that the claims of the '639 patent were limited to the 2x24 alloy family. (*See also, e.g.*, App. Ex. 13, A416:18-21.)

Members of that family include, not only the original 2024 alloy, but also Alcoa's 2524 alloy

that is the subject of the '639 patent and Alcan's 2024A alloy, found to infringe in the prior

litigation. Alcoa should be judicially estopped from asserting a contrary position here. Its

representations in the 1999 suit were successful. The Court sided with Alcoa and denied

Pechiney Rhenalu's motion to compel documents regarding alloys outside the 2x24 family.

(App. Ex. 14, A431.) The Court incorporated this position in its ultimate findings of fact and

conclusions of law and interpreted the process claims of the patent (which have compositional

limits identical to the product claims) as "claim[ing] steps to manufacture aluminum alloy

products with varying but similar 2024-type compositions." *Pechiney Rhenalu v. Alcoa, Inc.*,

224 F. Supp. 2d 773, 792-93 (D. Del. 2002).

    The doctrine of judicial estoppel precludes a party from successfully urging a particular

position in a legal proceeding, and then later taking a contrary position in a subsequent

proceeding. *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1345 (Fed. Cir.

2001); *Data General Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996).[6] The doctrine

applies to positions taken on patent scope: A party to an infringement action cannot freely

abandon the position it took on patent scope once trial court proceedings are over. *Interactive*

*Gift*, 256 F.3d at 1346, 1349; *Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 715 (Fed. Cir.

1998).

---

[6]    Federal Circuit law applies where "the issue pertains to or is unique to patent law." *Mylan*
*Pharms., Inc. v. Thompson*, 268 F.3d 1323, 1329 (Fed. Cir. 2001) ("[W]e will apply our own
law to both substantive and procedural issues intimately involved in the substance of
enforcement of the patent right.") (internal quotations omitted). "Any disputed questions
concerning the meaning and scope of patent claims, including the meaning of technologic
and other terms" are answered using Federal Circuit law. *See EMI Group N. Am. v. Intel*
*Corp.*, 157 F.3d 887, 891 (Fed. Cir. 1998).

Alcoa, therefore, should be estopped from now asserting that the '639 patent claims cover alloys outside the 2x24 family, such as Alcan's new accused alloy, which the Aluminum Association has assigned a new, original number, 2056, to start a new alloy family, 2x56, rather than a number in the 50-year old 2x24 family. Thus, Alcan's 2056 alloy cannot literally infringe any claims of the '639 patent.

### 4.    The 2056 Alloy Cannot Be Found To Infringe Under The Doctrine Of Equivalents.

Alcoa likewise cannot state a claim for infringement or active inducement under the doctrine of equivalents. The doctrine of equivalents is limited by the doctrine of prosecution history estoppel. That is, a patentee cannot use the doctrine of equivalents to recapture subject matter that was relinquished during prosecution of the patent. *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1582 (Fed. Cir. 1996). Thus, because, during prosecution, Alcoa distinguished a product from what is claimed, Alcoa is estopped from now asserting that the claim encompasses the relinquished subject matter. *See Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1577-78 (Fed. Cir. 1997); *Alpex Computer Corp. v. Nintendo Co.*, 102 F.3d 1214, 1221 (Fed. Cir. 1996). Prosecution history estoppel is a question of law, measured from the vantage point of what a competitor was reasonably entitled to conclude, from the prosecution history, that the applicant gave up to procure issuance of the patent. *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 952 (Fed. Cir. 1993).

Here, Alcoa is estopped from asserting the doctrine of equivalents on the basis of the arguments, as well as amendments, made during the prosecution of its claims. Arguments made to the PTO to distinguish the prior art give rise to estoppel, precluding application of the doctrine of equivalents. *See Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1304 (Fed. Cir. 1997) ("[S]ince, by distinguishing the claimed invention over the prior art, an applicant is indicating

17

what the claims do not cover, he is by implication surrendering such protection."). Alcoa made arguments during prosecution that now preclude it from relying on the doctrine of equivalents. In particular, Alcoa distinguished Cho on the basis of the alloy composition. Alcoa argued that Cho did not disclose Alcoa's alloy because Cho's alloy did not meet the registration limits for 2024. Having done so, Alcoa is estopped from attempting to recapture the surrendered subject matter, *i.e.*, subject matter outside of the 2024 registration limits, through the doctrine of equivalents.

Further, Alcoa also responded to the PTO's rejection by amending its pending claims to define the alloy composition as "consisting essentially of" the specified components, as opposed to merely "containing" those components, as originally recited. Such a change made in response to the PTO's rejection on the basis of prior art also gives rise to prosecution history estoppel. *See Regents of the Univ. of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1573-74 (Fed. Cir. 1997) (holding that the patentee's amendment of claims to substitute the transitional phrase "consisting essentially of" for "comprising" in response to the PTO's prior art rejection was a narrowing amendment that gave rise to prosecution history estoppel). This change, as noted above, narrows the claims from being open to the addition of unspecified ingredients to being closed to all except those additions that do not affect the "basic and novel characteristics" of the claimed invention. Accordingly, Alcoa cannot now through the doctrine of equivalents expand its claims to include elements that affect such properties.

## V.    CONCLUSION

For the foregoing reasons, Alcoa's Complaint should be dismissed as to all defendants with prejudice.

ASHBY & GEDDES

*/s/ Steven J. Balick*

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Avenue, 17th Floor
P.O. Box 1150
Wilmington, DE  19899
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Of Counsel:*

Steven R. Trybus
Donald R. Cassling
Shelley Smith
Patrick L. Patras
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611

*Counsel for Defendants*

Dated:  August 15, 2006

172171.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of August, 2006, the attached **DEFENDANTS'**

**OPENING MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO**

**DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE**

**GRANTED** was served upon the below-named counsel of record at the address and in the

manner indicated:

Frederick L. Cottrell, III, Esquire                           <u>HAND DELIVERY</u>
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, DE  19899

Evan R. Chesler, Esquire                              <u>VIA ELECTRONIC MAIL</u>
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY  10019

William G. Todd, Esquire                              <u>VIA ELECTRONIC MAIL</u>
Greenberg Traurig, LLP
200 Park Avenue
New York, NY  10166

*/s/ Steven J. Balick*
_____
Steven J. Balick

171219.1