IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ALCOA INC.,

Plaintiff,

vs.

ALCAN INC., a Canadian corporation, ALCAN CORP., a Texas corporation, ALCAN CORP., a Delaware corporation, PECHINEY, S.A., a French corporation, ALCAN RHENALU, a French corporation, ALCAN PECHINEY CORP., a Texas corporation, PECHINEY METALS, LLC, a Delaware corporation, ALCAN ROLLED PRODUCTS - RAVENSWOOD, LLC, a Delaware limited liability company,

Defendants.

C.A. No. 06-383-SLR

**PLAINTIFF ALCOA INC.'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Jeffrey L. Moyer (#3309)
moyer@rlf.com
Richards, Layton & Finger
One Rodney Square, P.O. Box 551
Wilmington, Delaware 19899
(302)651-7700
*Attorneys for Plaintiff Alcoa Inc.*

OF COUNSEL:
Evan R. Chesler
Daniel Slifkin
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019

Scott J. Bornstein
Greenberg Traurig, LLP
200 Park Avenue
New York, New York 10166

Dated: November 6, 2006

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..... ii

NATURE AND STAGE OF THE PROCEEDING ..... 1

PRELIMINARY STATEMENT ..... 2

SUMMARY OF ARGUMENT ..... 3

STANDARD OF REVIEW ..... 3

ARGUMENT ..... 5

I. ALCOA'S ALLEGATIONS ARE SUFFICIENT TO STATE A CLAIM FOR DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201(a) ..... 5

II. DEFENDANT'S ALLEGATIONS OF NONINFRINGEMENT ARE PREMATURE. ..... 9

III. DEFENDANT'S ALLEGATIONS OF NONINFRINGEMENT ARE MERITLESS ..... 12

A. The Patent Claims, Properly Construed, Do Not Recite a Limitation for Zinc ..... 12

1. The Claims Have Already Been Construed by this Court ..... 13

2. Alcan May Not Limit the Claims by a Preferred Embodiment in the Specification ..... 14

3. Alcoa Did Not Limit the Claims in the Patent Prosecution. ..... 16

4. Alcoa Did Not Limit the Claims in the Prior Litigation. ..... 18

B. Zinc Does Not Alter the Basic and Novel Properties of the Patented Combination ..... 21

CONCLUSION ..... 24

# TABLE OF AUTHORITIES

## CASES

*AFG Indus., Inc. v. Cardinal IG Co.*,
375 F.3d 1367 (Fed. Cir. 2004)........1, 13

*AK Steel Corp. v. Sollac & Ugine*,
344 F.3d 1234 (Fed. Cir. 2003)........21

*Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.*,
846 F.2d 731 (Fed. Cir. 1988)........5, 9

*Automation Sys., Inc. v. Intel Corp.*,
501 F. Supp. 345 (S.D. Iowa 1980)........6, 8

*Bai v. L & L Wings, Inc.*,
160 F.3d 1350 (Fed. Cir. 1998)........12

*Bayer AG v. Biovail Corp.*,
279 F.3d 1340 (Fed. Cir. 2002)........11

*Boeing Co. v. United States*,
69 Fed. Cl. 397 (Fed. Cl. 2006)........22

*Capo, Inc. v. Dioptics Med. Prods., Inc.*,
387 F.3d 1352 (Fed. Cir. 2004)........6

*Comark Commc'ns, Inc. v. Harris Corp.*,
156 F.3d 1182 (Fed. Cir. 1998)........15, 16

*Compaq Computer Corp. v. Inacom Corp.*,
No. Civ. A 01-108-GMS, 2001 WL 789408 (D. Del. July 12, 2001)........3, 4

*Conley v. Gibson*,
355 U.S. 41 (1957)........4, 10

*Conoco, Inc. v. Energy & Envtl. Int'l, LC*,
460 F.3d 1349 (Fed. Cir. 2006)........15

*D.P. Enters., Inc. v. Bucks County Cmty. Coll.*,
725 F.2d 943 (3d Cir. 1984)........3, 4, 9, 10

*Del Mar Avionics, Inc. v. Quinton Instrument Co.*,
836 F.2d 1320 (Fed. Cir. 1987)........1, 13

*E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
849 F.2d 1430 (Fed. Cir. 1988)....15

*Erbamont Inc. v. Cetus Corp.*,
720 F. Supp. 387 (D. Del. 1989)....6, 8

*Gammino v. Cellco P'ship*,
No. 04-4303, 2005 WL 2397168 (E.D. Pa. Sept. 27, 2005)....10

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.*,
824 F.2d 953 (Fed. Cir. 1987)....5

*Interdigital Tech. Corp. v. OKI Am., Inc.*,
845 F. Supp. 276 (E.D. Pa. 1994)....6, 7

*Intergraph Corp. v. Intel Corp.*,
253 F.3d 695 (Fed. Cir. 2001)....13, 14

*Invitrogen Corp. v. Biocrest Mfg., LP*,
327 F.3d 1364 (Fed. Cir. 2003)....18

*Kasper v. Cooper Canada Ltd.*,
688 F. Supp. 347 (N.D. Ill. 1988)....6, 8

*Kost v. Kozakiewicz*,
1 F.3d 176 (3d Cir. 1993)....10

*Laitram Corp. v. Cambridge Wire Cloth Co.*,
863 F.2d 855 (Fed. Cir. 1988)....16

*Lang v. Pac. Marine & Supply Co.*,
895 F.2d 761 (Fed. Cir. 1990)....6, 9

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995)....11, 12

*Midwest Indus., Inc. v. Karavan Trailers, Inc.*,
175 F.3d 1356 (Fed. Cir. 1999)....5

*N. Telecom Ltd. v. Samsung Elec. Co.*,
215 F.3d 1281 (Fed. Cir. 2000)....16, 18

*Neomagic Corp. v. Trident Microsystems, Inc.*,
287 F.3d 1062 (Fed. Cir. 2002)....14

*Omega Eng'g, Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003)....................18

*PPG Indus. v. Guardian Indus. Corp.*,
156 F.3d 1351 (Fed. Cir. 1998)....................21

*Paolino v. Channel Home Centers*,
668 F.2d 721 (3d Cir. 1981)....................4

*Pechiney Rhenalu v. Alcoa Inc.*,
224 F. Supp. 2d 773 (D. Del. 2002)....................*passim*

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)....................11, 13

*Phonometrics, Inc. v. Hospitality Franchise Sys., Inc.*,
203 F.3d 790 (Fed. Cir. 2000)....................10

*Proctor v. Seacord, No. Civ. A. 05-133-JJF*,
2006 WL 1749404 (D. Del. June 22, 2006)....................3

*RDP Techs., Inc. v. N-Viro Int'l Corp., No. Civ. A. 00-697-RRM*,
2001 WL 1083762 (D. Del. Sept. 17, 2001)....................8

*Rengo Co. v. Molins Mach. Co., Inc.*,
657 F.2d 535 (3d Cir. 1981)....................8

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
775 F.2d 1107 (Fed. Cir. 1985)....................14

*Sierra Applied Sciences, Inc. v. Advanced Energy Idus., Inc.*,
363 F.3d 1361 (Fed. Cir. 2004)....................5

*Storage Techs. Corp. v. Cisco Sys., Inc.*,
329 F.3d 823 (Fed. Cir. 2003)....................18

*Struthers Scientific & Int'l Corp. v. Gen. Foods Corp.*,
290 F. Supp. 122 (S.D. Tex. 1968)....................8

*Synthon IP, Inc. v. Pfizer Inc.*,
446 F. Supp. 2d 497 (E.D. Va. 2006)....................14

*United States v. Kennedy*,
738 F.2d 584 (3d Cir. 1984)....................4

*Westnofa USA Inc., v. British Design (USA) Corp.*,
222 U.S.P.Q. 136, 1983 WL 420 (N.D. Ill. Nov. 8, 1983)....................8

## STATUTES

28 U.S.C. § 2201(a) .......... 2, 3, 5

Fed. R. Civ. P. 8(a)(2) .......... 4

Fed. R. Civ. P. 84 .......... 10

Fed. R. Civ. P. Form 16 .......... 10

Plaintiff Alcoa Inc. ("Alcoa") respectfully submits this answering brief in opposition to defendant Alcan Rhenalu's motion to dismiss for failure to state a claim upon which relief can be granted.[1]

## NATURE AND STAGE OF THE PROCEEDING

Alcoa brought this action in June 2006, seeking a declaration that an aluminum alloy ("2056") manufactured and marketed by the defendants—Alcan Rhenalu and certain affiliates—will infringe Alcoa's patent, and seeking equitable relief. (D.I. 1 ("Compl.").) The defendants filed three separate motions to dismiss. First, all of the defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.I. 20, 21 ("Def. Br.").) Second, some of the defendants sought dismissal for lack of personal jurisdiction. (D.I. 23, 24.) Third, some of the defendants moved to dismiss on the theory that they were improperly joined. (D.I. 25, 26.) Thereafter, the parties agreed by stipulation that the claims against all of the defendants, except Alcan Rhenalu, would be dismissed without prejudice. (D.I. 34.) Consequently, the motion brought pursuant to Rule 12(b)(6) is the only remaining motion to dismiss and Alcan Rhenalu is the only remaining defendant. Thus, Alcoa opposes the motion to dismiss as if it were brought solely by defendant Alcan Rhenalu.

---

[1] Alcan Rhenalu is the new name for Pechiney Rhenalu. Roy Millington, Corporate Secretary of Alcan Inc., confirmed that "Pechiney Rhenalu continues to exist as a corporation, separate and apart from Alcan Inc. and Pechiney S.A., but has been renamed as Alcan Rhenalu". (See D.I. 24, at Ex. A ¶ 13.) In 1999, the defendant, as Pechiney Rhenalu, sued Alcoa for declaratory judgment of invalidity and noninfringement of Alcoa's '639 patent, the patent-in-suit here. With respect to the prior litigation, this Court's findings of fact and conclusions of law are reported at Pechiney Rhenalu v. Alcoa Inc., 224 F. Supp. 2d 773 (D. Del. 2002). They are, of course, res judicata against Alcan Rhenalu. See Del Mar Avionics, Inc. v. Quinton Instrument Co., 836 F.2d 1320, 1323-24 (Fed. Cir. 1987); see also AFG Indus., Inc. v. Cardinal IG Co., 375 F.3d 1367, 1372 (Fed. Cir. 2004); Intergraph Corp. v. Intel Corp., 253 F.3d 695, 697-98 (Fed. Cir. 2001).

## PRELIMINARY STATEMENT

Defendant Alcan Rhenalu ("Alcan") asks this Court to take the unusual step of dismissing a patent case at the pleading stage, something it is typically reluctant to do. Moreover, Alcan seeks the dismissal of claims that Alcoa simply has not brought. Alcan argues that Alcoa's Complaint should be dismissed because it does not allege facts that state a claim for actual infringement or inducement of an actual infringement of Alcoa's patent. (See Def. Br. at 7-9.) But those are not the claims that Alcoa has asserted.

Instead, Alcoa seeks a declaratory judgment, that defendant's "manufacture, use, offer for sale, or sale of the 2056 alloy within the United States, or the importation of products containing the 2056 alloy into the United States, will infringe [Alcoa's] '639 patent" and an order enjoining defendant from "marketing or offering for sale the 2056 alloy in the United States or to foreign manufacturers who are reasonably likely to offer products manufactured from the alloy for sale in the United States". (Compl. at 12.) Alcoa's declaratory judgment Complaint is completely appropriate and authorized by statute. See 28 U.S.C. § 2201(a). Defendant's argument about the sufficiency of Alcoa's Complaint is therefore entirely misplaced.

Beyond that, Alcan invites this Court to: (1) construe Alcoa's '639 patent claims to exclude alloys containing a certain amount of zinc (despite the fact that this Court has already construed those claims in the prior litigation and did not find any such limitation); (2) find that Alcan's accused alloy in fact contains a certain amount of zinc; and (3) find that Alcan's accused alloy does not infringe any claim of Alcoa's '639 patent. (See Def. Br. at 10-18.) Such determinations—which normally require a complete factual record—are not properly resolved on

a motion to dismiss and are premature.[2] And in any event, each of Alcan's contentions is without merit.

## SUMMARY OF ARGUMENT

1. Alcoa's Complaint alleges a justiciable controversy and states a claim pursuant to the Declaratory Judgment Act. 28 U.S.C. § 2201(a).

2. Alcan's arguments concerning claim construction and noninfringement are premature and not properly resolved on a Rule 12 motion.

3. In any case, Alcan's claim construction argument fails because Alcoa's patent claims do not include a compositional limitation for zinc, consistent with: (a) this Court's previous construction of those claims, which is res judicata against Alcan; (b) the clear language of the patent itself; (c) the prosecution history; and (d) the positions taken by Alcoa during prior the litigation over the patent.

## STANDARD OF REVIEW

"The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." Proctor v. Seacord, No. Civ. A. 05-133-JJF, 2006 WL 1749404, at *1 (D. Del. June 22, 2006); Compaq Computer Corp. v. Inacom Corp., No. Civ. A 01-108-GMS, 2001 WL 789408, at *1 (D. Del. July 12, 2001) (citing Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993)). "[I]n deciding a Rule 12(b)(6) motion, factual allegations of the complaint are to be accepted as true" and all "[r]easonable factual inferences will be drawn to aid the pleader". D.P. Enters., Inc. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

---

[2] Of course, Alcan's unusual requests are counter to the manner in which this Court typically conducts patent cases, including Markman determinations.

"To survive a motion to dismiss, the complaint must set forth 'a short and plain statement of the claim' to 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" United States v. Kennedy, 738 F.2d 584, 585 (3d Cir. 1984) (quoting Fed. R. Civ. P. 8(a)(2) and Conley v. Gibson, 355 U.S. 41, 47 (1957)). "In particular, the court looks to 'whether sufficient facts are pleaded to determine that the complaint is not frivolous, and to provide defendants with adequate notice to frame an answer.'" Compaq Computer, 2001 WL 789408, at *1 (quoting Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3d Cir. 1988)). "[T]he complaint should be dismissed only if it appears to a certainty that no relief could be granted under any set of facts which could be proved." D.P. Enters., 725 F.2d at 944; see also Paolino v. Channel Home Centers, 668 F.2d 721, 722 (3d Cir. 1981) (quoting Conley, 355 U.S. at 45).

## ARGUMENT

### I. ALCOA'S ALLEGATIONS ARE SUFFICIENT TO STATE A CLAIM FOR DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201(a).

Alcan contends that Alcoa's Complaint is defective because the facts alleged therein, "even if all taken as true, do not constitute infringement" and "even if true, are insufficient to state a claim of active inducement". (Def. Br. at 7, 9.) However, as is clear from its Complaint, Alcoa seeks relief not premised on actual infringement but rather for declaratory and injunctive relief to avoid a threatened infringement. (See Compl. at 12.)

Declaratory judgment actions are permitted in federal court pursuant to the Declaratory Judgment Act. See 28 U.S.C. § 2201(a). The Federal Circuit has held that "[t]he sole requirement for jurisdiction under the Act is that the conflict be real and immediate, i.e., that there be a true, actual 'controversy' required by the Act." Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 735 (Fed. Cir. 1988).[3] Alcan does not even seek to challenge that an actual controversy exists here.

An actual controversy under the Act does not require actual infringement. The "case-or-controversy test requires either activity which could constitute infringement or concrete steps taken with the intent to conduct such activity". Sierra Applied Sciences, Inc. v. Advanced Energy Idus., Inc., 363 F.3d 1361, 1377 (Fed. Cir. 2004) (quotation marks and citation omitted). A case can present a sufficient controversy to confer jurisdiction "regardless of whether there

[3] Federal Circuit precedent applies in patent suits to determine whether there is a sufficient controversy between the parties to confer jurisdiction for an action seeking a declaratory judgment. See Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1359 (Fed. Cir. 1999); Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953, 955 n.3 (Fed. Cir. 1987).

was actual pre-complaint infringement attributable to defendants". Erbamont Inc. v. Cetus Corp., 720 F. Supp. 387, 392 (D. Del. 1989).

Accordingly, Alcoa's Complaint need not allege infringement and inducement to infringe. "A party need not have engaged in actual manufacture, use or sale of a product in order to . . . be sued in a declaratory judgment action." Interdigital Tech. Corp. v. OKI Am., Inc., 845 F. Supp. 276, 284 (E.D. Pa. 1994). The "contention that there must have been an actual sale is without support in law or logic. To adopt such a position would completely defeat the purpose of declaratory relief." Kasper v. Cooper Canada Ltd., 688 F. Supp. 347, 352 (N.D. Ill. 1988); see also Automation Sys., Inc. v. Intel Corp., 501 F. Supp. 345, 346 (S.D. Iowa 1980) ("Defendant notes that it has only advertised the new product, but has not yet sold or manufactured it. The Court must reject this argument.").[4] Indeed, "[t]he field of patent litigation . . . is particularly adapted to declaratory resolution" and "[w]hen there is an actual controversy and a declaratory judgment would settle the legal relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance the declaratory judgment is not subject to dismissal". Capo, Inc. v. Dioptics Med. Prods., Inc., 387 F.3d 1352, 1357 (Fed. Cir. 2004) (quotation marks and citation omitted).

Alcoa's Complaint plainly alleges a sufficient controversy under the Declaratory Judgment Act. To confer jurisdiction, Alcoa need only have alleged: (1) that Alcan is "engaged

[4] It may well be that Alcan has actually infringed Alcoa's patent, as occurred—despite its initial denials—in the prior declaratory judgment case that Alcan (then named Pechiney Rhenalu) instituted regarding its 2024A alloy. Compare 1:99-cv-00301-SLR, D.I. 174, at ¶¶ 62-63 and 1:99-cv-00301-SLR, D.I. 190, at ¶ 22-23 with Pechiney Rhenalu, 224 F. Supp. 2d at 794 n.20. As further facts are revealed, Alcoa may pursue actual infringement and actual inducement claims. However, "[t]he Declaratory Judgment Act applies whether or not further relief is or could be sought". Lang v. Pac. Marine & Supply Co., 895 F.2d 761, 764 (Fed. Cir. 1990) (quotation marks and citations omitted). "[T]he fact that the patent owner, unlike the accused infringer, will have an express statutory remedy for infringement at a later time is irrelevant." Id.

in an activity directed toward making, selling, or using subject to an infringement charge" or is "making meaningful preparation for such activity"; and (2) that Alcan's conduct indicates "a refusal to change the course of its actions in the face of acts by [Alcoa] sufficient to create a reasonable apprehension that a suit will be forthcoming". Lang, 895 F.2d at 764.

First, in its Complaint, Alcoa alleges that Alcan:

- has manufactured the offending product (Compl. ¶¶ 31-32);
- has offered it for sale (id. ¶¶ 31);
- has supplied it "in commercial quantities"(id.);
- has "actively marketed" it "on the internet, at industry conferences and in face-to-face meetings" with potential customers (id. ¶¶ 36-38);
- maintains a website containing a "Global Offer" stating that the product is "available" and that it can be "delivered" (id. ¶ 46);
- at a presentation in Seattle (where The Boeing Company, a principal potential buyer of the infringing product, has its main facilities), described the product in terms of an "Alcan offer" and as "[i]ndustrially ready" with a "[f]ull data package available" (id. at ¶ 39); and
- has sent samples to aircraft manufacturers, Airbus and Embraer, who have conducted tests on the infringing product and who derive substantial revenues from aircraft sales in the United States. (Id. ¶ 47.)

Those allegations and all reasonable inferences therefrom indicate that, if it has not done so already, Alcan's sale of the infringing product in the United States or to someone who will import it into the United States is imminent.

Alcoa's allegations that Alcan has manufactured, marketed, and offered the accused product for sale are sufficient to create a justiciable controversy under the Declaratory Judgment Act. For example, in Interdigital Tech. Corp. v. OKI Am., Inc., 845 F. Supp. 276, 284-86 (E.D. Pa. 1994), the plaintiff claimed that the defendant marketed some of the accused product, constructed prototypes and entered into license agreements with other companies to produce its

products. There, the court found a sufficient controversy. See id. Similarly, in Kasper v. Cooper Canada Ltd., 688 F. Supp. 347, 351-52 (N.D. Ill. 1988), the court held that allegations that the defendant advertised and promoted the accused product, and represented to customers that it would be available "within several months", were sufficient to confer jurisdiction. There are numerous other cases where allegations of similar facts have conferred jurisdiction under the Act.[5]

Second, Alcoa further alleges that:

- Alcoa's counsel wrote to the Vice President and General Counsel of Alcan Corp. (the entity through which the defendant's ultimate parent does business in the United States) asking him to "advise [Alcoa] of Alcan's intentions regarding" the infringing alloy (Compl. ¶¶ 40-41);

- Alcan, through the Vice President and Senior Litigation Counsel of Pechiney Plastic Packaging, Inc.[6] responded in writing that "Alcan intends to offer" the product for sale (id. ¶¶ 42-45);

- Alcoa's counsel wrote to the Executive Vice President and Chief Legal Officer of Alcan Inc. (the defendant's ultimate parent), advising him of Alcoa's conclusion that Alcan's activities posed an imminent threat of infringing Alcoa's patent and stating Alcoa's intentions to protect its rights under the patent (id. ¶ 48); and

- Alcan, nonetheless, still maintains a website containing a "Global Offer" stating that the product is "available" and that it can be "delivered". (Id. ¶ 46.)[7]

---

[5] See, e.g., Rengo Co. v. Molins Mach. Co., Inc., 657 F.2d 535, 539 (3d Cir. 1981); RDP Techs., Inc. v. N-Viro Int'l Corp., No. Civ. A. 00-697-RRM, 2001 WL 1083762, at *5-6 (D. Del. Sept. 17, 2001); Erbamont Inc. v. Cetus Corp., 720 F. Supp. 387, 392 (D. Del. 1989); Westnofa USA Inc., v. British Design (USA) Corp., 222 U.S.P.Q. 136, 1983 WL 420, at *3 (N.D. Ill. Nov. 8, 1983); Automation Sys., 501 F. Supp. at 348; Struthers Scientific & Int'l Corp. v. Gen. Foods Corp., 290 F. Supp. 122, 125-26 (S.D. Tex. 1968).

[6] Alcan has stipulated that Pechiney Plastic Packaging, Inc. may have relevant material and that it will be treated as a party for purposes of discovery in this matter. (See D.I. 34, at ¶ 7.)

[7] Indeed, it is Alcoa's belief that Alcan has continued to commercialize the infringing alloy even after the filing of the Complaint. For example, it appears that Alcan has sought to establish the alloy's conformity with technical allowables set forth by the FAA's Metallic

Alcoa has thus alleged facts indicating Alcan's refusal to change course after Alcoa created a reasonable apprehension on the part of Alcan that Alcoa would sue to enforce the patent. See, e.g., Lang, 895 F.2d at 764; Arrowhead, 846 F.2d at 736. Those allegations, together with the allegations that Alcan is engaged in activity directed toward making, selling, or using subject to an infringement charge and that Alcan has "made meaningful preparations and taken concrete steps" towards such activity (Compl. ¶¶ 51, 53), create a justiciable controversy. See Lang, 895 F.2d at 764.

Notably, in its motion, Alcan does not challenge declaratory judgment jurisdiction. And, further, Alcan agreed by stipulation that it would not challenge subject matter jurisdiction except to the extent suggested by its motion to dismiss. (See D.I. 34, at ¶ 2.) Alcan's motion to dismiss should be denied.

## II. DEFENDANT'S ALLEGATIONS OF NONINFRINGEMENT ARE PREMATURE.

Alcoa pled the following facts that must be deemed to be true: "the composition of [Alcan's accused] alloy is within claims disclosed by Alcoa's '639 patent"; the "properties of the [accused] alloy similarly fall within claims disclosed by the '639 patent"; the accused "alloy is nothing more than another copy of [Alcoa's patented alloy]"; and the accused alloy "contains all the essential elements of [Alcoa's patented alloy]". (Compl. ¶ 32.) In deciding this Rule 12(b)(6) motion, those factual allegations of the Complaint are to be accepted as true and all reasonable factual inferences therefrom are to be drawn to aid Alcoa. See, e.g., D.P. Enters., Inc., 725 F.2d at 944.

---

Materials Properties Development and Standardization ("MMPDS") process, an additional important step in the commercialization of the material.

For a complaint to comply with the Federal Rules of Civil Procedure and avoid dismissal under Rule 12(b)(6), "all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests". Conley v. Gibson, 355 U.S. 41, 47-48 (1957) (quotation marks omitted). Pleading requirements in patent actions are especially bare bones. See Phonometrics, Inc. v. Hospitality Franchise Sys., Inc., 203 F.3d 790, 794 (Fed. Cir. 2000); Fed. R. Civ. P. 84, Fed. R. Civ. P. Form 16. Alcoa's allegations concerning the accused alloy and Alcoa's patent claims are plainly sufficient under the Rules of Civil Procedure and cannot be overcome on a motion to dismiss. See, e.g., Kost, 1 F.3d at 183; D.P. Enters., Inc., 725 F.2d at 944; Gammino v. Cellco P'ship, No. 04-4303, 2005 WL 2397168, at *1-2 (E.D. Pa. Sept. 27, 2005) (defendant's argument on motion for dismissal that it "cannot and has not infringed upon any patents" is only "appropriately advanced after discovery has been completed and upon summary judgment").

Ignoring that, and contrary to any suggestion that a case or controversy is lacking, Alcan instead invites this Court to hold, as a matter of fact, that its alloy "cannot infringe" because it does not embody Alcoa's patented invention. (See Def. Br. at 10.) Alcan moves to dismiss the Complaint because "[t]he accused product, the 2056 alloy, does not meet all of the compositional limitations of any claim of the '639 patent". (Id.) To support that argument, Alcan alleges that: (1) Alcoa's '639 patent claims apply to alloys having no more than 0.25% zinc; and (2) Alcan's accused 2056 alloy contains at least 0.4% zinc. (Id. at 10.) Based on those purported facts, Alcan summarily asserts that "Alcan's 2056 alloy, therefore, cannot infringe". (Id.)

When Alcan argues that Alcoa's '639 patent claims apply to alloys having no more than 0.25% zinc, they are arguing for the Court to adopt a particular construction of those claims.

Even if such an argument were procedurally proper at this stage—which it is not—none of the patent claims mentions zinc. For example, independent claim 72 states:

> "An aluminum alloy product comprising an aluminum base alloy consisting essentially of, by weight, about 3.8 to 4.5% copper, about 1.2 to 1.8% magnesium, about 0.3 to 0.9% manganese, the balance essentially aluminum and incidental elements and impurities, said aluminum alloy product having a minimum long transverse yield strength of 40 ksi or more, together with one or more of the following properties: (a) a maximum fatigue crack growth rate not greater than 10% above one or more of the levels shown in Figures 8 or 9; (b) a minimum T-L fracture toughness $K_c$ of at least 140 ksi√in; (c) a minimum T-L fracture toughness $K_{app}$ of at least 80 ksi√in." (D.I. 22, Ex. 9 at A279.)

Thus, to find a limitation for zinc, the Court would need to engage in a more searching analysis than merely accepting Alcan's representations.

The first step in a patent infringement analysis is determining the meaning and scope of the patent claims asserted to be infringed. See, e.g., Markman v. Westview Instruments, Inc., 52 F.3d 967, 976 (Fed. Cir. 1995). While, as a formal matter, claim construction is a question of law, that determination has to be made on a proper record. Thus, claim construction requires attention to the words of each asserted claim, construed through the eyes of a person of ordinary skill in the field of invention who is deemed to have knowledge of any special meaning and usage in the field, read in the context of intrinsic evidence, including the entire patent and the prosecution history, and perhaps aided by extrinsic evidence. See, e.g., Phillips v. AWH Corp., 415 F.3d 1303, 1311-19 (Fed. Cir. 2005) (collecting cases).

As we demonstrate below, this Court has already construed the claims of the '639 patent and Alcan improperly seeks to relitigate those issues. (See infra, Part III(A)(1).) Yet even if that were to be pursued—which it should not—it would require a detailed analysis that Alcan seeks to avoid. In Bayer AG v. Biovail Corp., 279 F.3d 1340, 1347-49 (Fed. Cir. 2002), where the district court had not yet performed "comprehensive claim construction of the relevant terms

based on a complete record", the Federal Circuit held that "it would be premature for [it] to engage in its own claim construction without, for instance, evidence of the meaning of the terms to one of skill in the art at the time of invention". The same is true here.

Alcan also seeks to have the Court perform the second step of an infringement analysis: "comparing the properly construed claims to the device accused of infringing". Markman, 52 F.3d at 976. Alcan argues that the Court should find that its alloy does not infringe based upon the amount of zinc in its composition. (See Def. Br. at 10, 13.) But there is no evidence before the Court regarding the zinc content of Alcan's product—just its own assertions. A determination on the question of infringement—whether literal or under the doctrine of equivalents—is a question of fact. See, e.g., Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998). That is not a proper determination at this stage.

Alcan's arguments about claim construction and its factual assertions about the accused alloy are improperly made at this time, and, for that reason alone, Alcan's motion to dismiss should be denied.

## III. DEFENDANT'S ALLEGATIONS OF NONINFRINGEMENT ARE MERITLESS.

Alcoa's response could end here, but Alcan has devoted much attention in its brief to what amount, at best, to summary judgment arguments (or issues for trial). As noted above, Alcan's noninfringement arguments are premature and inappropriate in the context of a Rule 12 motion. But to avoid any chance of them being credited by the Court, Alcoa demonstrates below that they are also fatally flawed.

### A. The Patent Claims, Properly Construed, Do Not Recite a Limitation for Zinc.

Even if this Court were to construe the claims of Alcoa's '639 patent at this stage, it should still find that none contains a limitation for zinc. In its brief, Alcan refers to one of the

142 product claims of the '639 patent. (See Def. Br. at 13); see also Pechiney Rhenalu, 224 F. Supp. 2d at 792 ("The patent contains 232 claims, consisting of 142 product claims"). Claim construction, of course, begins with the words of the claims themselves (see Phillips, 415 F.3d at 1312), and that claim recites no limitation for zinc. (See Def. Br. at 13 (quoting a portion of claim number 70).) In fact, none of the claims of the '639 patent recites a limitation for zinc.

Nonetheless, Alcan contends that the '639 patent claims are limited "to alloys having no more than 0.25% zinc by weight". (See id. at 13-14.) To support its position, Alcan variously argues that the claims are limited by: (1) the specification; (2) the prosecution history; and (3) Alcoa's statements in the prior litigation. (See id. at 10-17.) None of those arguments is correct.

**1. The Claims Have Already Been Construed by this Court.**

This Court has already had the benefit of a full round of Markman submissions and argument and, indeed, has previously construed the scope of Alcoa's '639 patent claims. There, the Court found that "[t]he tightest compositional limits recited by the asserted claims are: 4.0-4.5% Cu, 1.2-1.5% Mg, 0.4-0.7% Mn, maximum 0.15% Fe and maximum 0.12% Si". Pechiney Rhenalu, 224 F. Supp. 2d at 793. That construction includes no limitation for zinc whatsoever.

Since there is no dispute that Alcan is the same entity as Pechiney Rhenalu (see supra, note 1), this Court's prior findings and the claim construction based thereon are the law of the case and not available for redetermination. See Del Mar Avionics, Inc. v. Quinton Instrument Co., 836 F.2d 1320, 1323-24 (Fed. Cir. 1987) ("The prior determination of certain issues, including . . . claim construction . . . bars judicial redetermination of those issues as between the parties to the prior actions."); see also AFG Indus., Inc. v. Cardinal IG Co., 375 F.3d 1367, 1372 (Fed. Cir. 2004); Intergraph Corp. v. Intel Corp., 253 F.3d 695, 697-98 (Fed. Cir. 2001).

The fact that in the present suit the infringing product (2056) may be different from the prior infringing product (2024A) does not in any way diminish the force of the prior claim construction. "A claim is construed in the light of the claim language, the other claims, the prior art, the prosecution history, and the specification, not in light of the accused device." SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1118 (Fed Cir. 1985). "It is only after the claims have been construed without reference to the accused device that the claims, as so construed, are applied to the accused device to determine infringement." Id. (citation omitted); see also Neomagic Corp. v. Trident Microsystems, Inc., 287 F.3d 1062, 1074 (Fed. Cir. 2002) ("It is well settled that claims may not be construed by reference to the accused device."); Synthon IP, Inc. v. Pfizer Inc., 446 F. Supp. 2d 497, 504 (E.D. Va. 2006) ("Importantly, claim construction must proceed without regard to the putative infringing product or process and without regard to the consequences of claim construction on any infringement disputes.").

Further, none of the recognized exceptions that would permit Alcan to relitigate this Court's claim construction applies here. There has not been "the discovery of new and different material evidence that was not presented in the prior action, or an intervening change of controlling legal authority" and no party has claimed—nor could claim—that "the prior decision is clearly incorrect and its preservation would work a manifest injustice.". Intergraph Corp., 253 F.3d at 698. Notably, Pechiney Rhenalu did not appeal this Court's prior judgment and claim construction. Therefore, because this Court has already construed the claims at issue without any limitation for zinc, Alcan's proposed construction should be rejected.

**2. Alcan May Not Limit the Claims by a Preferred Embodiment in the Specification.**

To support its assertion that the claims are limited to a maximum zinc content of .25%, Alcan points to preferred embodiments described in the '639 patent application and in two parent

applications. (See Def. Br. at 13-14.)[8] It is well-settled, however, that a limitation cannot be drawn from a preferred embodiment. See, e.g., Conoco, Inc. v. Energy & Envtl. Int'l, LC, 460 F.3d 1349, 1357-58 (Fed. Cir. 2006); Comark Commc'ns, Inc. v. Harris Corp., 156 F.3d 1182, 1186-87 (Fed. Cir. 1998); E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co., 849 F.2d 1430, 1432-34 (Fed. Cir. 1988).

The Federal Circuit has explained:

> "It is entirely proper to use the specification to interpret what the patentee meant by a word or phrase in the claim. But this is not to be confused with adding an extraneous limitation appearing in the specification, which is improper. By 'extraneous,' we mean a limitation read into a claim from the specification wholly apart from any need to interpret what the patentee meant by particular words or phrases in the claim. Where a specification does not require a limitation, that limitation should not be read from the specification into the claims." E.I. Du Pont, 849 F.2d at 1433 (quotation marks and citations omitted).

In Comark Commc'ns, Inc. v. Harris Corp., 156 F.3d 1182, 1186-87 (Fed. Cir. 1998), the defendant sought to limit the patentee's claim with language found in the patent's description of the preferred embodiment. In rejecting defendant's arguments, the Federal Circuit noted that "[i]t is precisely against this type of claim construction that our prior case law counsels". Id. at 1187. "Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples will not generally be read into the claims." Id.

---

[8] Under the subheadings "Detailed Description of the Preferred Embodiments", parent application serial nos. 572,625 and 572,626 both state that "[a] preferred alloy would contain, 4.1 to 4.4 wt. % Cu, 1.2 to 1.45 wt. % Mg, 0.4 to 0.6 wt. % Mn, 0.1 wt. max. Fe, 0.1 wt. % max. Si, the balance aluminum, incidental elements and impurities. Elements such as Zn preferably have a maximum of 0.2 wt. % . . .". (D.I. 22, Ex. 1 at A7, Ex. 5 at A114.) Under the subheading "Detailed Description of the Preferred Embodiments" application serial no. 847,352 states that "A preferred alloy would contain about 4.1 to 4.4% Cu, about 1.2 to 1.45% Mg, about 0.4 to 0.7% Mn, Fe not exceeding about 0.1 or 0.15%, for instance about 0.01 or 0.02 to 0.12 or 0.15% Fe, Si not exceeding about 0.1 or 0.15% maximum, for instance about 0.01 or 0.02 to 0.10 or 0.12% Si, the balance essentially aluminum, incidental elements and impurities. Impurity element Zn preferably has a maximum of 0.2 or 0.25% . . . ." (Id., Ex. 9 at A208.)

(quotation marks and citation omitted); see also Laitram Corp. v. Cambridge Wire Cloth Co., 863 F.2d 855, 865 (Fed. Cir. 1988) ("References to a preferred embodiment, such as those often present in a specification, are not claim limitations.").

Here, Alcan does not seek recourse to the specification in order to interpret or reconcile ambiguous or disputed claim language. The claims are quite clear in giving specific ranges and limits only for copper, magnesium, manganese and, in certain claims, iron and silicon. The claims then state that "the balance [is] essentially aluminum and incidental elements and impurities". (D.I. 22, Ex. 9 at A279.) Zinc is specifically referred to in the specification as an "[i]mpurity element". (Id. at A208.) But Alcan seeks to go much further and make the preferred range for zinc in the specification a limit on the claims, despite the Federal Circuit's repeated warnings against it. Comark Commc'ns, 156 F.3d at 1186. "[P]referred embodiments, without more, do not limit claims." N. Telecom Ltd. v. Samsung Elec. Co., 215 F.3d 1281, 1293 (Fed. Cir. 2000). Alcan's proposed claim construction should be rejected.

### 3. Alcoa Did Not Limit the Claims in the Patent Prosecution.

Alcan contends that the prosecution history somehow created a limitation for zinc in the product claims of the '639 patent. (See Def. Br. at 10-13.) That is not correct. As indicated above, this Court has already construed those claims and, as part of that analysis, considered the prosecution history of the patent. See Pechiney Rhenalu, 224 F. Supp. 2d at 788, 791-92. There, the Court did not find that any narrowing amendments were made requiring a zinc limitation to be read into the claims. See id. at 793. Even if this Court were to permit Alcan to relitigate that claim construction, the prosecution history does not support Alcan's argument.

Alcan cites a portion of the prosecution history where Alcoa explained how its asserted process claims were not anticipated by prior art and how its process and product claims were not

obvious from that prior art in light of another reference. (See Def. Br. at 11-12.) The particular prior art cited, Cho, was fully discussed in this Court's prior opinion. See Pechiney Rhenalu, 224 F. Supp. 2d at 788. Cho teaches thermal processes applicable to aluminum-lithium alloys. See id. at 788; (D.I. 22, Ex. 3 at A92-93.) The patent examiner rejected the '639 claims as obvious from the Cho thermal process for aluminum-lithium alloys in light of other prior art, Hyatt, that teaches an aluminum-copper alloy structure. See Pechiney Rhenalu, 224 F. Supp. 2d at 788.

In its response—in which zinc is nowhere mentioned—Alcoa argued that its claims were not obvious in light of Cho because Cho disclosed processes for aluminum-lithium alloys, while Alcoa's claims concerned aluminum-copper-magnesium alloys. See id.; (see also D.I. 22, Ex. 3 at A92-93.)[9] As this Court previously noted, Alcoa's response was:

> "'The rejection asserted in the Office Action has not adequately explained why it would be obvious for someone to combine Cho's Al-Li alloy duplex structure processing with Hyatt's apparently conventional structure in an Al-Cu-Mg alloy. The alloys are different! The mere fact that both references seek to improve their respective different alloys by different thermal mechanical treatment alone does not suggest any combination. Any such combination of necessity requires picking this feature from one reference and combining it with that feature from the second reference with no suggestion within either reference to do so, a practice that is not appropriate in framing an obviousness rejection.'" Pechiney Rhenalu, 224 F. Supp. 2d at 788 (quoting patent prosecution history).

In short, Alcoa distinguished the prior art on the basis that Cho applied to aluminum-lithium alloys rather than aluminum-copper-magnesium alloys. (See D.I. 22, Ex. 3 at A92 ("Cho correctly and repeatedly characterizes his alloys as 'aluminum lithium' alloys."), A93 ("Applicants' present claims are clearly directed to Al-Cu-Mg alloys in contrast to Cho.").) The patent examiner ultimately agreed: "[T]he prior art search has not produced any references

---

[9] This Court previously noted that Al-Li alloys had not proven suitable for the aircraft fuselage applications claimed in the '639 patent and for which Alcan designed its 2056 product. See Pechiney Rhenalu, 224 F. Supp. 2d at 780 n.8.

which teach, disclose, or suggest applicants' claims to a thermomechanical process for making Al-Cu-Mg alloy stock material. These high-copper, no-lithium Al alloys utilize a re-heat step before hot working and solution heat treating stages". Pechiney Rhenalu, 224 F. Supp. 2d at 792.

For prosecution disclaimer to attach, Federal Circuit precedent "requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable". Omega Eng'g, Inc. v. Raytek Corp., 334 F.3d 1314, 1325-26 (Fed. Cir. 2003) (emphasis added). Disavowing statements must be "both so clear as to show reasonable clarity and deliberateness, and so unmistakable as to be unambiguous evidence of disclaimer". Id. at 1325 (citing Storage Techs. Corp. v. Cisco Sys., Inc., 329 F.3d 823, 833-34 (Fed. Cir. 2003) and Invitrogen Corp. v. Biocrest Mfg., LP, 327 F.3d 1364, 1369 (Fed. Cir. 2003)); see also N. Telecom, 215 F.3d at 1294-95.

Where zinc is nowhere mentioned, Alcoa's statements distinguishing processes for aluminum-lithium alloys are plainly insufficient to clearly and deliberately disclaim the applicability of Alcoa's independent product claims to Al-Cu-Mg alloys such as Alcan's 2056 alloy (see Compl. ¶ 34), even if they may also happen to contain zinc. Therefore, Alcan's prosecution history estoppel argument must be rejected.[10]

### 4. Alcoa Did Not Limit the Claims in the Prior Litigation.

Alcan further contends that, based on positions taken in the previous litigation, Alcoa surrendered application of its patent claims to alloys containing zinc. (See Def. Br. at 15-17.)

[10] Alcan likewise contends that Alcoa is precluded from availing itself of the doctrine of equivalents because of the statements made distinguishing Cho. (See Def. Br. at 17-18.) The standard for finding argument-based estoppel is the same as that for finding prosecution history disclaimer: that the statement must clearly and deliberately disavow the subject matter. See Omega Eng'g, Inc., 334 F.3d at 1326 n.1. Thus, the doctrine of equivalents will remain available for conducting any infringement analysis of the accused alloy.

Alcan, however, does not point to any claim construction argument or submission from the prior litigation. Rather, it contends that Alcoa somehow narrowed the scope of its patent claims by its arguments concerning the proper scope of discovery. (See id.) That contention simply distorts the record.

Alcan contends that Alcoa took the position that documents about alloys outside the 2X24 family were irrelevant and, further, that "Alcoa repeatedly took the position that the claims of the '639 patent were limited to the 2X24 alloy family". (Id. at 15.) Alcan is wrong.

First, Alcan refers to the declaration of inventor Robert Westerlund. (Id.) What Mr. Westerlund in fact stated was:

> "I also understand that we have offered to produce documents that may exist regarding alloys that were developed from programs to improve the damage tolerance properties of the 2024 alloy. In addition to the 2524 and 2024A alloys, that includes the 2048 alloy."
>
> "The remainder of the 2XXX alloys on Pechiney's revised list, however, do not appear to be even remotely relevant to the inventions of the '639 patent. Not one of the 2014, 2018, 2218, 2618, 2618A, 2219, 2319, 2419, or 2519 alloys is within the 2X24 family, or was developed out [of] a program to improve the damage tolerance properties of 2024, or is even known for high damage tolerance properties." (D.I. 22, Ex. 12 at A410 (emphasis added).)

Westerlund plainly indicated that 2XXX alloys designed as improvements upon 2024, including the 2048 alloy, were relevant to the '639 patent claims.

Second, Alcan cites to an incomplete quotation of a statement by counsel that said nothing about the claims or any limitation of the claims. Alcan quotes: "Now, the dispute is about the '639 patent. And the '639 patent is about one particular alloy. It is about an improvement to the 2024 alloy, which is one type of copper-based alloy." (See Def. Br. at 15 (citing D.I. 22, Ex. 13 at A416:18-21).) Counsel then continued, in a passage omitted by Alcan:

> "Now, so we are clear, Alcoa is in fact producing, within the categories—and I will come to which type of documents—within the categories identified in the

> letter to the Court, all the documents concerning the 2X24 series of alloys the plaintiffs requested, <u>and also those other two-series alloys which were designed to improve upon 2024. Specifically, the 2048 alloys</u>. What we don't want to produce is the other two-series copper-based alloys which we don't regard as relevant and the 7 series alloys, which is based on zinc, the 6 series alloys, alloys based on magnesium silicon, or the 8 series alloys, based on lithium, that are called for by plaintiff's request." (D.I. 22, Ex 13 at A417:3-15 (emphasis added).)

Just as in the Westerlund declaration, counsel for Alcoa plainly indicated that documents related to 2XXX alloys designed as improvements upon 2024, including the 2048 alloy, were relevant to the litigation.

In fact, when issuing its ruling, this Court agreed that documents relating to 2XXX alloys were relevant to the litigation. (D.I. 27, Ex. 14 at A431, ¶ 7.) The Order confirms that Alcoa stated "that it will produce documents regarding the composition, properties, testing, and process of production of the <u>2XXX</u> alloys on plaintiff's revised list". (<u>Id.</u> (emphasis added).)

In sum, in the prior litigation, Alcoa took the position that the '639 patent concerned 2XXX (Al-Cu-Mg) alloys that were designed to improve upon the damage tolerance properties of 2024. That is precisely what Alcan's 2056 alloy is. Indeed, as the Complaint (at ¶ 34) notes, Alcan's patent application for 2056 is entitled "Aircraft Structural Member Made of an Al-Cu-Mg Alloy" and describes it as "an AlCuMg alloy with improved damage tolerance, at least an equivalent mechanical strength, and improved resistance to corrosion in comparison with the prior art". Further, in the marketing materials Alcan maintains on its website, referenced in the Complaint, Alcan advertises 2056 by direct comparison to and as an improvement over 2024. (<u>See</u> 2056 Technical Data Sheet, appended hereto as Exhibit A.) Those are precisely the types of alloys for which Alcoa agreed to produce documents in the prior case. Therefore, Alcan's judicial estoppel argument should be rejected.

**B. Zinc Does Not Alter the Basic and Novel Properties of the Patented Combination.**

Alcan concedes that the compositional elements of the product claims of the '639 patent follow the transition phrase "consisting essentially of". (E.g., Def. Br. at 13.) "By using the term 'consisting essentially of,' the drafter signals that the invention necessarily includes the listed ingredients and is open to unlisted ingredients that do not materially affect the basic and novel properties of the invention." PPG Indus. v. Guardian Indus. Corp., 156 F.3d 1351, 1354 (Fed. Cir. 1998). Alcan also concedes that, consequently, an accused product will still infringe if it contains an additional unlisted ingredient that does not materially alter the basic and novel properties of the invention. (See Def. Br. at 13.) Those concessions further demonstrate why Alcan's position is untenable.

Alcan does not anywhere assert that—let alone attempt to explain how—zinc alters the basic and novel properties of the alloy at issue. (See id. at 13-14.) Instead, Alcan merely cites to AK Steel Corp. v. Sollac & Ugine, 344 F.3d 1234 (Fed. Cir. 2003). (See Def. Br. at 13-14.) There, the issue was whether it was for the jury to determine if an ingredient in the accused product had a material effect on the invention's properties or if the court could determine that as a matter of claim construction. See AK Steel, 344 F.3d at 1238-41. There, because the patent specification indicated that the product's silicon content should not exceed 0.5%, or it would not adhere well to steel, an important function of the invention, and because the patent "directly [spoke] to and conclusively answer[ed] [the] question" of whether silicon at greater than 0.5% had a material effect on the properties of the patented product, the court adopted that determination as a matter of claim construction rather than submitting it to the jury. Id.

That is not the case here. The '639 patent discloses its basic and novel characteristics. "[T]he Federal Circuit has taught that to identify the 'basic and novel' properties, [the] court

should look to the patent and its specification." Boeing Co. v. United States, 69 Fed. Cl. 397, 426 (Fed. Cl. 2006). As this Court previously determined, the '639 patent discloses that its basic and novel properties include, among others, that the alloy has improved resistance to fatigue crack growth, improved fracture toughness, is corrosion resistant, formable and is suited to use as aircraft skin. Pechiney Rhenalu, 224 F. Supp. 2d at 792-93. The patent nowhere suggests that the addition of zinc in the amounts allegedly present in Alcan's product would alter those basic and novel characteristics.

In fact, Alcan's claims about its alloy, 2056, instead suggest that the addition of zinc does not alter the basic and novel properties as disclosed by the '639 patent. Alcan's patent application for 2056 describes it as "an AlCuMg alloy with an improved damage tolerance, at least an equivalent mechanical strength, and improved resistance to corrosion in comparison with the prior art". (Compl. ¶ 34.) And the marketing materials on Alcan's website advertise 2056 as an improvement over 2024, with properties suited for use as an aircraft fuselage alloy. (See 2056 Technical Data Sheet, appended hereto as Exhibit A; Compl. ¶ 46.) In other words, Alcan touts its product as having exactly the same basic and novel features as Alcoa's patented invention.

The recent decision in Boeing Co. v. United States, 69 Fed. Cl. 397 (Fed. Cl. 2006), is instructive. Boeing claimed that an alloy used by NASA to build its space shuttle fuel tanks infringed Boeing's patented alloy. The government countered that the addition of silver to its alloy saved it from infringing. Boeing, 69 Fed. Cl. at 426-28. There, as here, the claim at issue did not mention silver and employed the transition term "consisting essentially of" when listing its elements. Id. at 426. The court held that because it did not alter the basic and novel characteristics of the alloy, NASA's alloy infringed despite the addition of silver. Id. at 428 ("the

addition of silver does not avoid infringement"). Further, even if the addition of an unlisted ingredient improves on those properties, it will not save the accused alloy from infringing:

> "Even if [the accused alloy] were superior in all ways to the alloys processed solely under the patent, defendant could still be liable for infringement as it is well-accepted that one cannot avoid infringement by building upon a prior patent. It is fundamental, the Federal Circuit has stated, that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device. This is because infringement does not require that a claim read on the entirety of an accused device, but merely on a part thereof. Any other reasoning would allow an infringer to avoid infringement merely by adding additional elements to an infringing device." Id. at 427 (quotation marks and citations omitted).

On the record here, Alcan's 2056 alloy plainly infringes Alcoa's '639 patent.

**CONCLUSION**

For the foregoing reasons, Alcan's motion to dismiss for failure to state a claim upon which relief can be granted should be denied in all respects.

Frederick L. Cottrell, III (#2555)
cottrell@rlf.com
Jeffrey L. Moyer (#3309)
moyer@rlf.com
Richards, Layton & Finger
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302)651-7700
*Attorneys for Plaintiff Alcoa Inc.*

OF COUNSEL:
Evan R. Chesler
Daniel Slifkin
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 Eighth Avenue
New York, New York 10019

Scott J. Bornstein
Greenberg Traurig, LLP
200 Park Avenue
New York, New York 10166

Dated: November 6, 2006

# EXHIBIT A






# ALCAN AEROSPACE

## 2056 T3 - Fuselage clad sheets

### Description

ALCAN 2056 clad alloy (patent pending) is an Al-Cu-Mg-Zn alloy, designed to improve assembly corrosion resistance, while exhibiting a good balance of tensile properties and high damage tolerance properties.

### Applications

2056 clad sheets are particularly recommended for fuselage application.

### Chemical composition limits (wt%)

(acc. to The Aluminium Association)

| | Core 2056 | Cladding 1050 |
|---|---|---|
| Si | 0.10 max | Si + Fe max: 0.7 |
| Fe | 0.12 max | |
| Cu | 3.3 - 4.3 | 0.10 max |
| Mn | 0.10 - 0.50 | 0.05 max |
| Mg | 0.6 - 1.4 | 0.05 max |
| Zn | 0.40 - 0.8 | 0.10 max |
| Ti | 0.10 max | 0.10 max |
| Others | 0.15 max | 0.03 max |

### Mechanical properties

Guaranteed minimum properties, T3 temper

| Thickness mm / (inch) | | 1,60 (0.063)<th<3,25 (0.126) | 3,25 (0.126)< th <6,35 (0.25) |
|---|---|---|---|
| Tensile strength MPa / (ksi) | LT | 427 (62) | 427 (62) |
| Yield strength MPa / (ksi) | LT | 276 (40) | 283 (41) |
| Elongation A5.65Vs (%) | LT | 16 | 15 |

### Thermal treatments

2056 is delivered in O or T3 temper depending on customer requirements.

# 2056 T3 - Fuselage clad sheets

## Corrosion : cladding consumption

The cladding consumption of 2056 clad sheet is lower than for 2024 clad sheet (typical 3,2 mm).




## Ease of manufacture

2056 clad sheet exhibits a very good formability. Some fuselage skin might be stretched directly in one step instead of two for conventionnal 2024.

## Availability

2056 clad fuselage sheets are available in the thickness range from 1,6 up to 8 mm (0.06 to 0.31 in).

## Fatigue crack growth rate

CCT test specimen according to ASTM E647 (R = 0.1, W = 400 mm, T-L).

Typical curves




## Procurement specifications

2056 clad T3 is covered by AMS 4298. Introduction to MMPDS is pending.

## Information

For additional information, please contact your local Alcan representative.



"The present brochure is not contractual, and shall, in no way, incur the liability of Alcan on account of the information contained herein. This information is given purely as a guide; it is up to the readers to check that it is accurate and to consult the Alcan Group and other specialists before use."

facilitiescom RCS Lyon 425 108 149

**Alcan Aerospace, Transportation and Industry**
7 place du Chancelier Adenauer
F - 75116 Paris
Tel : +33 (0)1 56 28 21 16
Fax: +33 (0)1 56 28 32 90
www.alcan-aerospace.com

EDITION 06-05

# CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2006, I hand delivered the foregoing Notice of Service to the following persons and electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

**HAND DELIVERY:**
Steven J. Balick
Ashby & Geddes
222 Delaware Avenue
P.O. Box 1150
Wilmington, Delaware 19899

I hereby certify that on November 6, 2006, I have sent by Federal Express the aforesaid Notice of Service to the following non-registered participants:

**FEDERAL EXPRESS:**
Steven R. Trybus
Shelly Smith
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, Illinois 60611-7603

Jeffrey L. Moyer (#3309)
moyer@rlf.com